# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>AUTEL ROBOTICS CO., LTD. and AUTEL ROBOTICS EUROPE GMBH,<br><br>            Defendants. | Case No. 2:26-cv-226<br><br>**ORIGINAL COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 9,900,766; 10,425,806; 11,234,121;**<br><br>**DEMAND FOR JURY TRIAL** |

  

Source 1: https://www.autelrobotics.com/productdetail/evo-lite-series-drones/
Source 2: https://www.autelrobotics.com/productdetail/evo-ii-drones/
Source 3: https://www.autelrobotics.com/productdetail/evo-nano-series-drones/

## COMPLAINT FOR PATENT INFRINGEMENT

1.  Plaintiff Cellspin Soft, Inc. ("Cellspin" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Autel Robotics Co., Ltd. and Autel Robotics Europe GmbH (collectively, "Autel" or "Defendants") for infringement of United States Patent Nos. 9,900,766 ("the '766 Patent"), 10,425,806 ("the '806 Patent"), and 11,234,121 ("the '121 Patent") (collectively, the "Patents-in-Suit"), and alleges as follows:

## NATURE OF THE ACTION

2.  This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, and 284, to obtain damages and injunctive relief resulting from Defendants' unauthorized actions of making, having made, using, selling, offering to sell, and/or importing into the United States products that infringe or enable the infringement of one or more claims of the Patents-in-Suit. The Patents-in-Suit cover methods and systems for automatic multimedia upload and data transfer from Bluetooth- or Wi-Fi-enabled data capture devices (e.g., cameras, drones) to web services via mobile devices (e.g., a remote controller connected via a USB cable to a smartphone) with minimal user intervention. The accused functionality is implemented through Autel mobile applications published by Autel Robotics Co., Ltd. in Apple's App Store and other channels and controlled by Autel through associated cloud services.

## THE PARTIES

3.  Plaintiff, Cellspin Soft, Inc. ("Cellspin"), is a corporation with an office and place business at 2784 Homestead Rd PMB 116, Santa Clara, CA 95051.

4.  Defendant Autel Robotics Co., Ltd. ("Autel China") is, upon information and belief, a corporation organized under the laws of the People's Republic of China, with its principal place of business and global headquarters at 18th Floor, Block C1, Nanshan iPark, No. 1001 Xueyuan Avenue, Nanshan District, Shenzhen,

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Guangdong, China 518055 (and related facilities at 8F, Building B1, Nanshan Zhiyuan, No. 1001 Xueyuan Avenue, Shenzhen). Autel China designs, develops, manufactures, controls, and directs the firmware, mobile applications (published directly under its name "Autel Robotics Co., Ltd." on the Apple App Store), cloud/web services, and overall architecture of the accused products. Autel China publishes the Accused Autel Apps on the Apple App Store, with privacy policies hosted on its China-based domain autelrobotics.com/privacy and sub-pages. Autel China imports and sells the accused products directly into the United States and through authorized channels, with products available at numerous retailers throughout the United States, including in the Eastern District of Texas.

5.   Autel China conducts business in the United States through subsidiaries and affiliates, including Autel Robotics USA LLC, a Washington limited liability company located at 22522 29th Dr SE, Ste 101, Bothell, WA 98021, which serves as Autel China's U.S. sales, marketing, distribution, and support arm for the accused products. Autel Robotics USA LLC is not named as a defendant at this time but is referenced as part of Autel's global distribution network. Autel Robotics Co., Ltd. is identified as the developer and seller of the Autel Explorer, Autel Explorer V2, and Autel Sky mobile applications in Apple's App Store.

6. Defendant Autel Robotics Europe GmbH ("Autel Europe") is a German limited liability company (Gesellschaft mit beschränkter Haftung) registered with the District Court of Munich under HRB 237698, with its registered office at Feringastraße 6, c/o HQ. 3. Stock, 85774 Unterföhring, Germany. Autel Europe distributes Autel products that operate with firmware, mobile applications, and cloud services designed and controlled by Autel China, which are the same systems accused of infringement in the United States. Autel Europe serves as Autel China's exclusive European sales, marketing, distribution, warranty, and customer-support arm for the accused products, including through EU-specific support via support.eu@autelrobotics.com as listed on Autel China's official website.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

7.  Autel China and Autel Europe coordinate global branding, websites, mobile applications, firmware updates, cloud services, and distribution channels for the accused products. Autel China and Autel Europe operate as a single integrated enterprise under Autel China's complete direction and control. Autel China owns or exercises dominion and control over the day-to-day operations, product design decisions, firmware, mobile applications, cloud services, pricing, marketing strategies, and regional distribution of Autel Europe. Autel Europe acts solely as the exclusive regional sales, marketing, distribution, and support arm for Autel China and has no independent authority over the accused infringing functionality. Accordingly, the entities are agents, alter egos, and/or joint venturers of one another, such that the acts of each are attributable to the others, and each is jointly and severally liable for the infringement alleged herein.

8.  Autel designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports drones configured to capture multimedia data (e.g., photos, videos) and automatically transfer it via Wi-Fi Direct to a remote controller connected via a USB cable to a smartphone, and subsequently to web services, including the products accused of infringement in this Complaint, in the United States, including this Judicial District. Upon information and belief, Autel employs personnel in the United States for sales, demonstrations, and testing of Autel products

9. Upon information and belief, Autel's Chinese roots have triggered US regulatory actions, including its 2024 addition to the US Department of Commerce's Entity List for national security concerns, restricting US technology exports. In 2025, the US Department of Defense labeled it a "Chinese Military Company." The FCC's 2025 ban on new foreign drone approvals affects Autel, prohibiting new models from obtaining FCC certification. Autel denies military ties, claiming civilian focus and independent audits showing no security risks. These restrictions have impacted US operations but not halted sales of pre-approved models.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

## JURISDICTION AND VENUE

10. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

11. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, and 284. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has specific personal jurisdiction over Defendants consistent with due process because Cellspin's claims arise out of or relate to Defendants' purposeful contacts with Texas and this District. Autel Robotics Co., Ltd. ("Autel China") purposefully avails itself of this forum, inter alia, by designing and publishing the accused mobile applications—including Autel Explorer, Autel Explorer V2, and Autel Sky—in Apple's App Store and other distribution channels under its name "Autel Robotics Co., Ltd.," thereby distributing the accused software directly to users in the United States and this District. The App Store listings for these applications identify Autel China as the developer and seller and link to privacy policies hosted on Autel China's domain at www.autelrobotics.com/privacy and related sub-pages, confirming Autel China's control over the design, distribution, operation, and data practices of the accused applications and associated cloud services used by customers in the United States, including Texas. Autel China further purposefully directs activities to this District by importing accused products into the United States; directing marketing, sales, and shipments of accused products into Texas through authorized retailers and online channels; providing ongoing firmware updates, application updates, account authentication, technical support, and cloud services to devices used in Texas; and promoting and supporting accused products in Texas, including through industry and public-safety robotics events. Apple App Store listings for Autel Explorer (https://apps.apple.com/us/app/autel-explorer/id1395815245), Autel Explorer V2 app (https://apps.apple.com/us/app/autel-explorer-v2/id1671748757), and Autel

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Sky   (https://apps.apple.com/us/app/autel-sky/id1571426955)   identify   "Autel Robotics Co., Ltd." as developer/seller and link to privacy policies hosted at www.autelrobotics.com/privacy , reflecting Autel Robotics Co., Ltd.'s control over the distribution and updating of the accused applications and associated cloud services in the United States. These contacts give rise to and relate directly to the accused infringement. See *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

13. Autel Europe participates in the global distribution and support of Autel products that operate with firmware, mobile applications, and cloud services designed and controlled by Autel China, which are the same systems accused of infringement in the United States. To the extent Autel Europe acts as an agent or distributor for Autel China with respect to the accused products and services, its acts are attributable to Autel China for jurisdictional purposes.

14. In the alternative, personal jurisdiction exists over Defendants under Fed. R. Civ. P. 4(k)(2).

15. Venue is proper in this District under 28 U.S.C. §§ 1391(c)(3) and 1400(b) because Defendants are foreign entities and thus may be sued in any judicial district, including this District. *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc*., 406 U.S. 706 (1972).

## PATENTS-IN-SUIT

16. Plaintiff incorporates by reference the allegations contained in the paragraphs above.

17. "Patents are presumed valid, and each patent claim is 'presumed valid independently of the validity of other claims.'" *Kowa Co., Ltd. v. Amneal Pharms*., LLC, No. 14-CV-2758 (PAC), 2017 WL 10667089, at *6 (S.D.N.Y. Sept. 19, 2017) (*citing* 35 U.S.C. § 282) *aff'd*, 745 F. Appx 168 (Fed. Cir. 2018).

18. "Patent examiners are owed deference and are 'presumed to have considered' prior art references listed on the face of a patent." *Id.* (*citing Shire, LLC*

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

*v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)). Defendants "have the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Id.* (*quoting PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

19. By operation of law, the Patents-in-Suit originally issued and exclusively vested to Cellspin Soft, Inc. as of the issue date of the Patents-in-Suit.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti*, 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.*, 565 Fed. Appx. 888, 889 (Fed. Cir. 2014).

20. United States Patent No. 9,900,766, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the United States Patent and Trademark Office (USPTO) on February 20, 2018, after a full and thorough examination. A true and correct copy is attached as **Exhibit A**.

21. United States Patent No. 10,425,806, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the USPTO on September 24, 2019, after a full and thorough examination. A true and correct copy is attached as **Exhibit B**.

22. United States Patent No. 11,234,121, entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content," was duly and legally issued by the USPTO on January 25, 2022, after a full and thorough examination. A true and correct copy is attached as **Exhibit C**.

23. Plaintiff is the assignee of all right, title, and interest in and to the Patents-in-Suit and possesses all rights of recovery, including the right to recover damages for past, present, and future infringement and to obtain injunctive relief.

24. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282, and each

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

patent claim is presumed valid independently of the validity of other claims.

25. The Patents-in-Suit cover innovative methods and systems for automatically transferring data, such as Photos and Videos, from a Wi Fi Direct (short range wireless) - enabled data capture device (e.g., a camera/drone) to a mobile device (e.g., a smartphone connected via a USB cable to a remote controller) via a secure paired short range connection, and subsequently to a web service (e.g., a cloud server) using HTTP, with minimal user intervention. Some of the key features include short-range pairing, signal notifications, event notifications, polling, cryptographic authentication, and automatic data upload to web services.

26. A variety of well-known companies and a multitude of USPTO examiners have cited the Patents-in-Suit in the prosecution of these companies' patent applications including, Samsung, Nokia, Citrix Systems, Amazon Technologies, Microsoft, and Google.[1] This shows the importance of the technology to leading technology providers.

27. The USPTO Examiners did thorough search for prior art looking into at least the following recorded classifications:

      a. "H04W8/24 Transfer of terminal data"

      b. "H04L63/0492 Network architectures or network communication protocols for network security for providing a confidential data exchange among entities communicating through data packet networks wherein the data content is protected, e.g. by encrypting or encapsulating the payload by using a location-limited connection, e.g. near-field communication or limited proximity of entities"

      c. "H04B7/26 Radio transmission systems, i.e. using radiation field for communication between two or more posts at least one of which is mobile"

      d. "H04L49/552 Prevention, detection or correction of errors by ensuring

---

[1] *See https://patents.google.com/patent/US9900766B2/en* as last visited on March 16, 2026.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

the integrity of packets received through redundant connections

e. "H04L63/0435 Network architectures or network communication protocols for network security for providing a confidential data exchange among entities communicating through data packet networks wherein the data content is protected, e.g. by encrypting or encapsulating the payload wherein the sending and receiving network entities apply symmetric encryption, i.e. same key used for encryption and decryption"

f. "H04L63/083 Network architectures or network communication protocols for network security for authentication of entities using passwords"

g. "H04W84/18 Self-organising networks, e.g. ad-hoc networks or sensor networks"

h. "H04W12/02 - Protecting privacy or anonymity, e.g. protecting personally identifiable information [PII]"

i. "H04L67/10 Protocols in which an application is distributed across nodes in the network"

j. "H04L67/1095 Replication or mirroring of data, e.g. scheduling or transport for data synchronisation between network nodes"

k. "H04L67/02 Protocols based on web technology, e.g. hypertext transfer protocol [HTTP]"

l. "H04L67/06 Protocols specially adapted for file transfer, e.g. file transfer protocol [FTP]"

m. "H04L65/403 Arrangements for multi-party communication, e.g. for conferences"

n. "H04L7/0008 Synchronisation information channels, e.g. clock distribution lines"

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

## AUTEL ACCUSED INSTRUMENTALITIES

28. Autel infringes, and/or induces others to infringe, the asserted patent claims with its "Accused Instrumentalities," through its **professional, and consumer drone platforms**, **proprietary mobile software applications**, and **automatic wireless data-transfer functionality**

29. Autel's accused instrumentalities include not only the accused drone and camera hardware, but also Autel's proprietary mobile software applications, which perform and control the infringing functionality. These mobile applications are distributed in the United States through Apple's App Store and Google Play and are required for operation of the accused products

30. The accused mobile applications include, without limitation: (i) **Autel Sky app**; and (ii) **Autel Explorer app**; and (iii) **Autel Explorer V2 app** (collectively, the "**Accused Autel Apps**"). The Autel Explorer app (available at https://apps.apple.com/us/app/autel-explorer/id1395815245, and https://www.autelrobotics.com/download/app/); The Autel Explorer V2 app (available at https://apps.apple.com/us/app/autel-explorer-v2/id1671748757, and https://www.autelrobotics.com/download/app/); and the Autel Sky app (available at https://apps.apple.com/us/app/autel-sky/id1571426955, and https://www.autelrobotics.com/download/app/).

31. The Autel Explorer app and the Autel Explorer V2 app are comprehensive applications designed for Autel drones, including the EVO II series. They provides live HD video feeds, real-time preview, and remote control, enabling users to adjust camera settings (e.g., exposure, shutter speed) and fine-tune composition. The apps support intelligent modes such as AI tracking, quick editing, and advanced editing functions (e.g., trim, filters). They facilitate seamless wireless connectivity via Wi-Fi Direct, allowing automatic transfer of photos and videos to the smartphone connected via USB cable to the remote controller, and cloud services with minimal user intervention. Users can activate devices, receive push notifications for new

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

content availability, and export files directly to platforms without manual downloads, streamlining post-production.

32. The Autel Sky app is tailored for Autel consumer drones, including the EVO Nano and Lite series, offering an intuitive flight interface, transfer functionality for wireless content transfer to smartphone connected via USB cable to the remote controller, and intelligent modes like Orbit, Rocket, Flick, and Fade Away. It supports 4K video recording, real-time flight data (e.g., altitude, battery status), and seamless integration with cloud services for uploading photos and videos. The app uses Wi-Fi Direct for device connectivity, enabling automatic data transfer with user authentication and minimal interaction post-setup. Recent updates added features enhancing creative control. The app requires permissions for background operation to ensure uninterrupted data syncing to web services.

33. Each of the Accused Autel Apps performs one or more steps of the asserted claims of the Patents-in-Suit, including automatic detection of newly captured multimedia data, establishing and maintaining Wi-Fi Direct connections with the capture device, identifying a user or device, and upon information and belief, automatically uploading multimedia data to a remote web or cloud service using HTTP or HTTPS with minimal user intervention.

34. The Accused Autel Apps have no substantial non-infringing use when used with the accused products and are specifically designed to enable and induce infringement of the Patents-in-Suit.

35. The accused products include **EVO Lite Series**, **EVO Nano series**, and **EVO II series**.

36. Each of these accused products operates with one or more Accused Autel Apps including **Autel Sky**, **Autel Explorer** or **Autel Explorer V2**, that perform the claimed steps of the Patents-in-Suit, including automatic detection, wireless transfer, user or device identification, and cloud upload of multimedia content.

37. **EVO Nano Series**: Compact drone with 4K/30fps video, 48MP, 1/2" CMOS

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

sensor, 3-way obstacle avoidance, 28-minute flight time, SkyLink Technology, Wi-Fi (802.11ac), and Autel Sky app compatibility. Supports automatic transfer of images and videos with minimal user intervention to remote controller connected via USB to a smartphone via Wi-Fi Direct.

38. **EVO Lite Series**: Drone with 4K/60fps video, 50MP, 1/1.28" CMOS sensor, 3-axis gimbal, 40-minute flight time, SkyLink Technology, Wi-Fi (802.11ac), and Autel Sky app support. Supports automatic transfer of images and videos with minimal user intervention to remote controller connected via USB to a smartphone via Wi-Fi Direct.

39. **EVO II Series** (original): Foldable drone with 8K video, 48MP, 1/2" CMOS sensor, 40-minute flight time, SkyLink Technology, Wi-Fi (802.11ac), and Autel Explorer app or Autel Explorer V2 app integration. Supports automatic transfer of images and videos with minimal user intervention to remote controller connected via USB to a smartphone via Wi-Fi Direct.

40. The exemplary infringement charts, attached as **Exhibits D through F**, detail how the Autel's accused products practice the claimed inventions and infringe all claims of the Patents-in-Suit. Specifically: **Exhibit D: ('766 Patent), Exhibit E: ('806 Patent) and Exhibit F: ('121 Patent)**. These charts demonstrate that the Autel EVO series products, in conjunction with their respective apps, implement substantially identical Wi-Fi Direct data transfer functionality, meeting all claim limitations of the Patents-in-Suit. The analysis is representative of all Accused Instrumentalities, as each employs the same app-enabled Wi-Fi Direct transfer technology, with variations only in sensor resolution, processor type, or flight capabilities, which do not affect the infringing functionality.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,900,766

41. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

42. United States Patent No. 9,900,766 (the "'766 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

43. Autel has directly infringed, and continues to directly infringe, the '766 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which practice the methods claimed in the '766 Patent, including all claims, within the United States and this District. For example, Autel practices the claimed methods by testing, demonstrating, and using the Accused Instrumentalities, which acquire multimedia data, automatically transfer it via Wi-Fi Direct to a paired mobile device (e.g., a smartphone connected via a USB cable to a remote controller) running the Autel app, and upload it to a Autel-controlled cloud or web service with a user identifier. See **Exhibit D** for details.

44. Autel has indirectly infringed, and continues to indirectly infringe, the '766 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers and end-users, in this District and elsewhere in the United States, through product sales, the Autel apps, and instructions (e.g., user manuals, setup guides). Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the Autel apps, available through Google and Apple app stores accessible in EDTX, which encourage users to automatically upload multimedia to web and cloud services using authenticated HTTP or HTTPS connections with minimal user intervention, thereby infringing Cellspin's patents.

45. Autel contributes to infringement of the '766 Patent pursuant to 35 U.S.C. § 271(c) by selling and offering to sell the Accused Instrumentalities and the Autel apps, which are material components of the claimed methods, knowing they are especially adapted for infringing use and not suitable for substantial non-infringing use.

46. Autel's direct and indirect infringement has caused Plaintiff irreparable

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

harm, entitling Plaintiff to damages under 35 U.S.C. § 284 and injunctive relief under 35 U.S.C. § 283.

47. Defendants manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

48. Defendants, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

49. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

50. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

that infringement").

51. Autel has indirectly infringed, and continues to indirectly infringe, each of the Patents-in-Suit pursuant to 35 U.S.C. §§ 271(b) and (c) by actively inducing and contributing to direct infringement by customers and end-users through product sales, the Accused Autel Apps, and instructions. The Accused Autel Apps have no substantial non-infringing use when used with the accused products and are specifically designed to enable and induce infringement.

52. Autel China received actual notice of the Patents-in-Suit in Jan 2026 via Cellspin's licensing letter. Autel China was personally served with this letter on January 13, 2026, via FedEx International Priority to its Shenzhen headquarters **(Exhibit G).** Despite such notice, Autel China has continued publishing updates to the accused mobile applications and firmware (including updates issued after January 2026), demonstrating continued infringement with knowledge of Cellspin's patent rights and rendering this case egregious and willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

53. Defendants had actual or constructive notice of the Patents-in-Suit, including through industry awareness of Cellspin's patent portfolio, Autel's deliberate feature parity with competing infringing products in the drone and camera market, and Autel's continued development and deployment of substantially identical automatic multimedia upload functionality across successive product generations.

54. Despite such knowledge, Defendants have continued to make, use, sell, and support the accused products and associated mobile applications, including after regulatory scrutiny and U.S. government actions directed to Autel's technology stack, rendering Defendants' infringement willful, deliberate, and egregious

55. Each of Autel's aforesaid activities have been without authority and/or license from Plaintiff.

56. On account of the foregoing, Plaintiff contends such activities by Autel qualify this as an egregious case of misconduct beyond typical infringement,

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,425,806

57. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

58. United States Patent No. 10,425,806 (the "'806 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

59. Autel has directly infringed, and continues to directly infringe, the '806 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which practice the methods claimed in the '806 Patent, including all claims, within the United States and this District. See **Exhibit E** for details. All Accused Instrumentalities share this functionality.

60. Autel has indirectly infringed, and continues to indirectly infringe, the '806 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers and end-users, in this District and elsewhere in the United States, through product sales, the Autel apps, and instructions (e.g., user manuals, setup guides). Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the Autel apps, available through Google and Apple app stores accessible in EDTX, which encourage users to automatically upload multimedia to Autel-controlled cloud and web services using authenticated HTTP or HTTPS connections with minimal user intervention, thereby infringing Cellspin's patents.

61. Autel contributes to infringement of the '806 Patent pursuant to 35 U.S.C. § 271(c) by selling and offering to sell the Accused Instrumentalities and the Autel apps, which are material components of the claimed methods, knowing they are

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

especially adapted for infringing use and not suitable for substantial non-infringing use.

62. Autel's direct and indirect infringement has caused Plaintiff irreparable harm, entitling Plaintiff to damages under 35 U.S.C. § 284 and injunctive relief under 35 U.S.C. § 283.

63. Defendants manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

64. Defendants, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

65. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

66. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (explaining that the contributory

infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

67. Autel has indirectly infringed, and continues to indirectly infringe, each of the Patents-in-Suit pursuant to 35 U.S.C. §§ 271(b) and (c) by actively inducing and contributing to direct infringement by customers and end-users through product sales, the Accused Autel Apps, and instructions. The Accused Autel Apps have no substantial non-infringing use when used with the accused products and are specifically designed to enable and induce infringement.

68. Autel China received actual notice of the Patents-in-Suit in Jan 2026 via Cellspin's licensing letter. Autel China was personally served with this letter on January 13, 2026, via FedEx International Priority to its Shenzhen headquarters **(Exhibit G).** Despite such notice, Autel China has continued publishing updates to the accused mobile applications and firmware (including updates issued after January 2026), demonstrating continued infringement with knowledge of Cellspin's patent rights and rendering this case egregious and willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

69. Defendants had actual or constructive notice of the Patents-in-Suit, including through industry awareness of Cellspin's patent portfolio, Autel's deliberate feature parity with competing infringing products in the drone and camera market, and Autel's continued development and deployment of substantially identical automatic multimedia upload functionality across successive product generations.

70. Despite such knowledge, Defendants have continued to make, use, sell, and support the accused products and associated mobile applications, including after regulatory scrutiny and U.S. government actions directed to Autel's technology stack, rendering Defendants' infringement willful, deliberate, and egregious

71. Each of Autel's aforesaid activities have been without authority and/or

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

license from Plaintiff.

72. On account of the foregoing, Plaintiff contends such activities by Autel qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,234,121

73. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

74. United States Patent No. 11,234,121 (the "'121 Patent") was duly and legally issued by the USPTO after a full and examination presumed to be thorough.

75. Autel directly infringed, and continues to infringe directly, the '121 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Accused Instrumentalities, which embody the systems claimed in the '121 Patent, including all claims, within the United States and this District. See **Exhibit F** for details.

76. Autel has indirectly infringed, and continues to indirectly infringe, the '121 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing direct infringement by others, including customers and end-users, in this District and elsewhere in the United States, through product sales, the Autel apps, and instructions (e.g., user manuals, setup guides). Defendants induce infringement under 35 U.S.C. § 271(b) by providing instructions and promotional materials in the Autel apps, available through Google and Apple app stores accessible in EDTX, which encourage users to automatically upload multimedia to Autel-controlled cloud and web services using authenticated HTTP or HTTPS connections with minimal user intervention, thereby infringing Cellspin's patents.

77. Autel contributes to infringement of the '121 Patent pursuant to 35 U.S.C. §

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

271(c) by selling and offering to sell the Accused Instrumentalities and the Autel apps, which are material components of the claimed methods, knowing they are especially adapted for infringing use and not suitable for substantial non-infringing use.

78. Autel's direct and indirect infringement has caused Plaintiff irreparable harm, entitling Plaintiff to damages under 35 U.S.C. § 284 and injunctive relief under 35 U.S.C. § 283.

79. Defendants manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Products and generates substantial financial revenues and benefits therefrom.

80. Defendants, through its willful blindness, which constitutes the necessary knowledge, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement— either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

81. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

82. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

83. Autel has indirectly infringed, and continues to indirectly infringe, each of the Patents-in-Suit pursuant to 35 U.S.C. §§ 271(b) and (c) by actively inducing and contributing to direct infringement by customers and end-users through product sales, the Accused Autel Apps, and instructions. The Accused Autel Apps have no substantial non-infringing use when used with the accused products and are specifically designed to enable and induce infringement.

84. Autel China received actual notice of the Patents-in-Suit in Jan 2026 via Cellspin's licensing letter. Autel China was personally served with this letter on January 13, 2026, via FedEx International Priority to its Shenzhen headquarters **(Exhibit G).** Despite such notice, Autel China has continued publishing updates to the accused mobile applications and firmware (including updates issued after January 2026), demonstrating continued infringement with knowledge of Cellspin's patent rights and rendering this case egregious and willful, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284.

85. Defendants had actual or constructive notice of the Patents-in-Suit, including through industry awareness of Cellspin's patent portfolio, Autel's deliberate feature parity with competing infringing products in the drone and camera market, and Autel's continued development and deployment of substantially identical automatic multimedia upload functionality across successive product generations.

86. Despite such knowledge, Defendants have continued to make, use, sell, and support the accused products and associated mobile applications, including after regulatory scrutiny and U.S. government actions directed to Autel's technology

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

stack, rendering Defendants' infringement willful, deliberate, and egregious

87. Each of Autel's aforesaid activities have been without authority and/or license from Plaintiff.

88. On account of the foregoing, Plaintiff contends such activities by Autel qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. §§ 284, 285 and 1927.

## PRAYER FOR RELIEF

89. Plaintiff respectfully requests the Court enter judgment in its favor and against Defendants as follows:

  i.   Finding that Defendants have directly and/or indirectly infringed all claims of the Patents-in-Suit;

  ii.  Awarding Plaintiff damages under 35 U.S.C. § 284, including treble damages for willful infringement, and damages for post-verdict infringement;

  iii. Awarding Plaintiff pre-judgment and post-judgment interest and costs;

  iv.  Declaring this case exceptional and awarding Plaintiff reasonable attorney fees under 35 U.S.C. § 285 or § 1927;

  v.   Issuing a permanent injunction under 35 U.S.C. § 283 enjoining Defendants and their affiliates from infringing the Patents-in-Suit;

## JURY DEMAND

90. Plaintiff hereby requests a trial by jury including pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

Dated:  March 19, 2026                    Respectfully Submitted

                                          */s/ Randall Garteiser*
                                          Randall Garteiser

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 284-5200

**ATTORNEYS FOR PLAINTIFF**

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**