# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> AUTEL ROBOTICS CO., LTD. and AUTEL ROBOTICS EUROPE GMBH, <br><br> *Defendants.* | Case No. 2:26-cv-00226-JRG-RSP <br><br> **Jury Trial Demanded** <br><br> **Judge Rodney Gilstrap** <br> **Magistrate Judge Roy S. Payne** |

**DEFENDANTS AUTEL ROBOTICS CO., LTD. AND AUTEL ROBOTICS EUROPE GMBH'S CONSOLIDATED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS**

**ANJIE BROAD LAW FIRM**

Zhiyu Liang (Cal. Bar No. 357770)
14th Floor, North Tower, Beijing Kerry Centre
No. 1 Guanghua Road
Chaoyang District, Beijing 100020, China
Phone: +86 (10) 8567-5988
Email:   liangzhiyu@anjielaw.com

*Attorney for Defendants Autel Robotics Co.,*
*Ltd. and Autel Robotics Europe GmbH*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ISSUES.................................................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 3

    I.    AUTEL ROBOTICS CO., LTD. ............................................................................. 3

    II.    AUTEL ROBOTICS EUROPE GMBH ................................................................. 5

LEGAL STANDARD............................................................................................................ 6

    I.    PERSONAL JURISDICTION................................................................................. 6

    II.    IMPROPER SERVICE ........................................................................................... 7

ARGUMENT.......................................................................................................................... 7

    I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS ................................................................ 7

        A.    Plaintiff Fails to Allege Defendant-Specific Conduct Showing Purposeful Availment of Texas. ............................................................................................ 7

        B.    Plaintiff Fails to Show That Its Claims Arise Out of or Relate to Defendants' Alleged Texas Contacts. ......................................................................................... 13

        C.    Exercise of Jurisdiction Would Offend Fair Play and Substantial Justice.14

        D.    Plaintiff Cannot Establish Personal Jurisdiction Under Rule 4(k)(2). ....... 16

    II.    THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS .......................................................................................................... 17

        A.    Service on Autel Robotics USA LLC's Registered Agent Does Not Constitute Service on Defendants. ............................................................................ 17

        B.    Texas Civil Practice and Remedies Code § 17.045 Triggers the Hague Service Convention. ...................................................................................................... 19

        C.    Service Must Proceed Through the Central Authorities Under the Hague Service Convention, Because China and Germany Object to Article 10. ................................................................................................................ 21

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
697 F. Supp. 3d 635 (E.D. Tex. 2023)................................................................ 7

*Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cnty.*,
480 U.S. 102 (1987)................................................................ 11, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................ 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008)................................................................ 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................ 12

*Bradley v. Chiron Corp.*,
136 F.3d 1317 (Fed. Cir. 1998)................................................................ 12

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)................................................................ 13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)................................................................ 8, 14, 15

*Carimi v. Royal Caribbean Cruise Line, Inc.*,
959 F.2d 1344 (5th Cir. 1992)................................................................ 7

*Celgard, LLC v. SK Innovation Co.*,
792 F.3d 1373 (Fed. Cir. 2015)................................................................ 6

*Elecs. for Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003)................................................................ 6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)................................................................ 13

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
933 F.3d 1302 (Fed. Cir. 2019)................................................................ 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................ 13

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335 (Fed. Cir. 2012)................................................................ 8

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019)................................................................ 6

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)................................................................ 6, 15

ii

*J. McIntyre Mach., Ltd. v. Nicastro,*
564 U.S. 873 (2011) ............................................................................................. 10

*Lisson v. ING Groep N.V.,*
262 F. App'x 567 (5th Cir. 2007) ........................................................................ 18

*NexLearn, LLC v. Allen Interactions, Inc.,*
859 F.3d 1371 (Fed. Cir. 2017) ............................................................................. 8

*Nuance Commc'ns, Inc. v. Abbyy Software House,*
626 F.3d 1222 (Fed. Cir. 2010) ......................................................................... 6, 9

*Sheets v. Yamaha Motors Corp., U.S.A.,*
891 F.2d 533 (5th Cir. 1990) ............................................................................... 20

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico,*
563 F.3d 1285 (Fed. Cir. 2009) ...................................................................... 16, 17

*Touchcom, Inc. v. Bereskin & Parr,*
574 F.3d 1403 (Fed. Cir. 2009) ........................................................................... 16

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
486 U.S. 694 (1988) ............................................................................................. 19

*Walden v. Fiore,*
571 U.S. 277 (2014) .......................................................................................... 8, 13

*Water Splash, Inc. v. Menon,*
581 U.S. 271 (2017) ........................................................................................ 19, 21

*World–Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ............................................................................................. 15

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG,*
848 F.3d 1346 (Fed. Cir. 2017) ........................................................................... 15

**Statutes**

20 U.S.T. 361 .............................................................................................. 19, 21, 22

Tex. Bus. Orgs. Code § 5.201(b)(1) ....................................................................... 18

Tex. Civ. Prac. & Rem. Code § 17.043 ................................................................... 20

Tex. Civ. Prac. & Rem. Code § 17.044 ................................................................... 20

Tex. Civ. Prac. & Rem. Code § 17.045 ....................................................... 19, 20, 22

**Other Authorities**

Federal Rule of Civil Procedure 4(f) ........................................................................ 7

Federal Rule of Civil Procedure 4(h)(1) .............................................................. 7, 17

Federal Rule of Civil Procedure 4(h)(2) ............................................................................... 7, 17

Federal Rule of Civil Procedure 4(k)(2) ............................................................................. 16, 17

Federal Rule of Civil Procedure 12(b)(2) .............................................................................. 2, 22

Federal Rule of Civil Procedure 12(b)(5) ................................................................... 2, 3, 18, 22

Hague Conference on Private International Law,
China – Central Authority & Practical Information...................................................................... 21

Hague Conference on Private International Law,
Germany – Central Authority & practical information................................................................ 21

Texas Secretary of State, *Registered Agents*
https://www.sos.state.tx.us/corp/registeredagents.shtml............................................................ 18

U.S. Dep't of Just., Office of International Judicial Assistance
https://www.justice.gov/civil/page/file/1064896/dl?inline .......................................................... 19

**INTRODUCTION**

Defendants Autel Robotics Co., Ltd. and Autel Robotics Europe GmbH (collectively, "Defendants") respectfully move to dismiss the Complaint filed by Plaintiff Cellspin Soft, Inc. ("Plaintiff"), which alleges infringement of U.S. Patent Nos. 9,900,766, 10,425,806, and 11,234,121 and seeks damages and injunctive relief based on accused drone products, mobile applications, and related data-transfer functionality.

Plaintiff seeks to subject two foreign companies—Autel Robotics Co., Ltd. ("Autel China"), a Chinese corporation, and Autel Robotics Europe GmbH ("Autel Europe"), a German corporation—to the jurisdiction of a Texas court based on allegations that are untethered to Texas and unsupported by the facts. Plaintiff's theory rests on conflating the distinct roles of Autel China, Autel Europe, and Autel Robotics USA LLC ("Autel USA"), a separate U.S. entity that Plaintiff itself alleges serves as the U.S. sales, marketing, distribution, and support arm for Autel products. Dkt. 1 ¶ 5. Yet despite acknowledging Autel USA's responsibility for U.S.-facing commercial activities, Plaintiff attempts to attribute those activities to Autel China and Autel Europe without pleading facts sufficient to establish purposeful availment, forum-directed conduct, or any basis to disregard corporate separateness.

The Complaint fails to establish personal jurisdiction over either Defendant. As to Autel China, Plaintiff alleges only that Autel China develops Autel-branded applications and products that are accessible in the United States and that Autel products enter the United States through Autel USA and other distribution channels. *Id*. ¶¶ 4-5. Those allegations may suggest an alleged connection to the United States generally, but they do not establish suit-related contacts with Texas. As to Autel Europe, Plaintiff relies almost entirely on conclusory assertions that Autel Europe is an "agent," "alter ego," or "joint venturer" of other entities, while failing to allege any Texas-

1

directed conduct by Autel Europe itself. *Id*. ¶ 7. Federal Circuit and Supreme Court precedent make clear that specific jurisdiction cannot be based on nationally accessible websites, generalized U.S. commerce, or the acts of third parties and affiliated entities. Because Plaintiff fails to allege defendant-specific facts establishing purposeful availment of Texas or claims arising from Texas contacts, the Complaint must be dismissed under Rule 12(b)(2).

The Complaint independently fails for insufficient service of process. Rather than serving either Defendant in accordance with Federal Rule of Civil Procedure 4 and the Hague Service Convention, Plaintiff purported to serve Autel USA's registered agent in Texas. But Autel USA's registered agent is not an agent authorized to accept service on behalf of Autel China or Autel Europe. Moreover, because Plaintiff seeks to serve Defendants located in China and Germany, Texas law requires the transmission of judicial documents abroad, thereby triggering the mandatory procedures of the Hague Service Convention. Both China and Germany object to the alternative methods of service authorized by Article 10, requiring service through the Convention's Central Authority procedures. Plaintiff ignored those requirements and instead attempted domestic service on a separate corporate entity's registered agent.

In short, Plaintiff has neither established personal jurisdiction over these foreign Defendants nor properly served them. The Court should therefore dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(5). Alternatively, the Court should quash the purported service and require Plaintiff to effect service in accordance with the Hague Service Convention.

## STATEMENT OF ISSUES

1.    Whether the Complaint should be dismissed under Rule 12(b)(2) because Plaintiff fails to allege defendant-specific facts showing that Defendants purposefully directed suit-related activities toward Texas, that Plaintiff's claims arise out of or relate to any Texas contacts

attributable to either Defendant, or that jurisdiction would comport with fair play and substantial justice.

2.     Whether the Complaint should be dismissed under Rule 12(b)(5), or alternatively whether service should be quashed, because Plaintiff served only the registered agent of Autel USA, a separate corporate entity, and failed to serve Defendants in China and Germany through a method authorized by the Hague Service Convention.

## FACTUAL BACKGROUND

### I.     AUTEL ROBOTICS CO., LTD.

Autel China is a corporation organized under the laws of the People's Republic of China, with its principal place of business at Room 29-24, 9m Commercial Platform, Foud Town, No. 128 Guiwan 5th Road, Nanshan District, Qianhai Cooperation Zone, Shenzhen, Guangdong, China 518055.. *See* Zhuanpeng Cheng Declaration ("Cheng Decl.") ¶ 3.

Autel China designs, develops, and manufactures firmware, mobile applications, cloud/web services, and the overall architecture for drones sold under the Autel brand. *Id*. ¶ 4. Autel China also designs, develops, and manufactures various drone products sold under the Autel brand. *Id*. ¶ 5. The relevant mobile applications, including Autel-branded applications published through app stores, are referred to herein as the "Autel Apps," and the relevant drone products are referred to herein as the "Autel Products."

Although Autel China is involved in the design, development, and manufacture of the Autel Apps and Autel Products, Autel China does not itself conduct sales, marketing, advertising, distribution, or post-sale service activities in the United States. *Id*. ¶¶ 8-9. Autel China delivers Autel Products outside the territory of the United States to Autel USA. *Id*. ¶ 10. Autel USA is the entity responsible for importing, marketing, advertising, offering for sale, selling, and providing

3

post-sale service for Autel Products in the United States. *Id*. ¶ 12. Autel USA operates separately from Autel China and is responsible for the U.S.-facing commercial activities concerning Autel Products. *Id*. ¶¶ 11, 13.

The data collected through Autel Products used by U.S. customers is stored within the United States. *Id*. ¶ 32. Without customer authorization, such data is not transferred to Autel China. *Id*. ¶ 33. Thus, the U.S. commercial operation and customer-facing activities concerning Autel Products are handled by Autel USA, not Autel China. *Id*. ¶¶ 34-35.

Plaintiff's own Complaint recognizes this division of responsibilities. Plaintiff alleges that Autel USA is "a Washington limited liability company located at 22522 29th Dr SE, Ste 101, Bothell, WA 98021," and that Autel USA "serves as Autel China's U.S. sales, marketing, distribution, and support arm for the accused products." Dkt. 1 ¶ 5. Yet Plaintiff disregards that same allegation when attempting to attribute U.S. "importation… [,] directing marketing, sales, and shipments" directly to Autel China. *See id*. ¶ 12. Plaintiff's jurisdictional theory therefore rests on conflating Autel China's foreign design and manufacturing role with Autel USA's separate U.S. commercial activities.

The same is true for Plaintiff's allegations concerning the Autel Apps. Autel China designs and develops the Autel Apps and makes them available through the Apple App Store. Cheng Decl. ¶ 24. But the Autel Apps are used in connection with Autel Products, and the U.S.-facing distribution, use, customer support, and data-related operations associated with those products are controlled and managed by Autel USA. *Id*. ¶¶ 13, 30. With respect to U.S. customers, the relevant product use, data practices, and customer-facing support are handled by Autel USA. *Id*. ¶ 31. Plaintiff therefore lacks a factual basis to allege that Autel China controls the distribution and associated cloud services of the accused applications in the United States. *See* Dkt. 1 ¶ 12.

## II.     AUTEL ROBOTICS EUROPE GMBH

Autel Europe is a German limited liability company registered with the District Court of Munich under HRB 237698, with its registered office at Geschäftsanschrift: Landsberger Str. 410, 81241 München, Deutschland. Manling Li Declaration ("Li Decl.") ¶ 4.

Autel Europe is responsible for sales, marketing, distribution, warranty, and customer-support activities for Autel Products and Autel Apps in Europe. *Id*. ¶ 5. Autel Europe does not conduct sales, marketing, distribution, importation, support, or other commercial activities in the United States. *Id*. ¶ 16. It does not sell accused products into Texas, does not direct marketing or advertising to Texas, does not maintain offices, personnel, assets, or operations in Texas, and does not provide post-sale service to Texas customers. *Id*. ¶¶ 18-28.

Autel Europe operates as a separate foreign entity responsible for the European market. *Id*. ¶ 6. It is not responsible for U.S. sales, U.S. imports, U.S. advertising, U.S. customer support, U.S. data storage, or U.S. cloud-service operations concerning the accused products. *Id*. ¶¶ 9-17.

Plaintiff's Complaint acknowledges that Autel Europe acts as a "regional sales, marketing, distribution, and support" entity for Europe. Dkt. 1 ¶ 7. Nevertheless, Plaintiff attempts to subject Autel Europe to personal jurisdiction in Texas by invoking labels such as "agent," "alter ego," and "joint venturer." *Id*. Those labels are unsupported by well-pleaded facts. Plaintiff does not allege facts showing that Autel Europe purposefully directed any conduct to Texas, entered the Texas market, controlled U.S. sales, imported products into the United States, or participated in any Texas-specific activity giving rise to Plaintiff's claims.

The facts are to the contrary. Autel Europe is a German entity responsible for European activities, and it has no relevant U.S. or Texas contacts. Li Decl. ¶¶ 9-28. Plaintiff's attempt to rely on conclusory agency, alter-ego, and joint-venture allegations cannot substitute for defendant-

specific facts establishing purposeful contacts with Texas.

## <u>LEGAL STANDARD</u>

### I.    PERSONAL JURISDICTION

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). In the present case, general jurisdiction is not at issue. Therefore, this Court will proceed with its evaluation regarding specific jurisdiction. "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id*. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (citations omitted).

To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id*.

6

## II. IMPROPER SERVICE

A foreign corporation may be served in one of two ways. If service is made within a judicial district of the United States, the corporation may be served either: (i) in the manner prescribed by state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (ii) by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(h)(1). If service is made outside any judicial district of the United States, the corporation must be served in any manner prescribed by Rule 4(f). *See* Fed. R. Civ. P. 4(h)(2).

Rule 4(f), in turn, authorizes service in a foreign country by: (1) "any internationally agreed means of service that is reasonably calculated to give notice," such as service authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) "by a method that is reasonably calculated to give notice," if there is "no internationally agreed means"; or (3) "by other means not prohibited by international agreement, as the court orders." *See* Fed. R. Civ. P. 4(f).

"In order for a court to exercise jurisdiction over a defendant, a plaintiff must serve that defendant with process according to Rule 4 of the Federal Rules of Civil Procedure." *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 640 (E.D. Tex. 2023). Once service is challenged, the plaintiff bears the burden of making a *prima facie* showing that service was proper. *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

## <u>ARGUMENT</u>

## I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS

### A. Plaintiff Fails to Allege Defendant-Specific Conduct Showing Purposeful

**Availment of Texas.**

In the Complaint, Plaintiff attempts to establish purposeful availment by Autel China in Texas on two grounds: (i) that Autel China allegedly "design[s] and publish[es]" the Autel Apps "in Apple's App Store and other distribution channels" accessible in the United States; and (ii) that Autel China allegedly "import[s]," "direct[s] marketing, sales, and shipments" of Autel Products in the United States through Autel USA and other channels. Dkt. 1 ¶ 12. Plaintiff further attempts to establish purposeful availment by Autel Europe in Texas by invoking agency, alter-ego, and joint-venture theories. *Id*. ¶¶ 7, 13. Both theories fail as a matter of law and are inconsistent with the actual facts.

### 1.    Autel Robotics Co., Ltd.

The Supreme Court has made clear that the purposeful availment inquiry requires that "the relationship among the defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Consistent with this principle, the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Additionally, the "minimum contacts" analysis requires courts to look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285.

Applying that framework, the Federal Circuit has repeatedly held that maintaining or displaying a website accessible in the forum state is not enough to establish purposeful availment. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("The existence of Allen's website, without more, is insufficient to show that Allen has minimum contacts with Kansas."); *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) (holding that an

advertisement was "nationally distributed and not limited to [the forum State]," are "attenuated evidence [that] does not show that the [forum State] was a target market."); *Nuance Commc'ns*, 626 F.3d at 1235 (holding "this court cannot determine that Abbyy Software purposefully availed itself of the privilege of conducting activities in California by some affirmative act or conduct, and that Nuance's claims arise out of those activities," although Abbyy Software maintained a website that "promotes the sale of [the infringing] products in California").

Plaintiff's allegation that Autel China "design[s] and publish[es]" the Autel Apps in the Apple App Store and other distribution channels accessible in the United States is no different from the website-accessibility theory rejected by the Federal Circuit. Mere availability of software through a nationally accessible platform does not show that Autel China deliberately targeted Texas, purposefully availed itself of Texas law, or created suit-related contacts with Texas. The Apple App Store is a nationwide—and indeed global—distribution platform. Plaintiff does not allege that Autel China created Texas-specific app listings, engaged in Texas-specific advertising, entered into Texas-specific contracts, directed Texas-specific downloads, or otherwise singled out Texas as a target market for the Autel Apps.

Nor does Plaintiff allege any defendant-specific facts showing that the Apple App Store availability of the Autel Apps created a Texas contact by Autel China itself. Plaintiff does not identify any Texas customer who downloaded the Autel Apps because of conduct directed by Autel China to Texas. It does not identify any Texas-specific transaction involving Autel China. It does not allege that Autel China controlled any Texas sales channel, maintained any Texas office, employed Texas personnel, held Texas assets, or provided Texas-directed customer support. At most, Plaintiff alleges that the Autel Apps were available to users in Texas in the same way they were available to users throughout the United States. That is not purposeful availment of Texas.

9

As the Supreme Court explained, "a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). Plaintiff's App Store theory therefore may, at most, allege generalized U.S. accessibility; it does not establish that Autel China deliberately targeted Texas or created suit-related contacts with Texas sufficient to support specific jurisdiction in this Court.

Plaintiff's allegation that Autel China "direct[s] marketing, sales, and shipments" of Autel Products in the United States through Autel USA and other channels fares no better. Dkt. 1 ¶ 12. As a factual matter, Autel China does not market, sell, offer for sale, import, ship, or provide post-sale service for Autel Products in the United States. Cheng Decl. ¶ 9. Autel China delivers Autel Products outside the territory of the United States to Autel USA. *Id*. ¶ 10. Autel USA—not Autel China—is responsible for U.S. importation, marketing, advertising, offers for sale, sales, distribution, customer support, and post-sale maintenance of Autel Products in the United States. *Id*. ¶¶ 11-13. Plaintiff's theory therefore depends on attributing Autel USA's alleged U.S.-facing conduct to Autel China, without pleading facts sufficient to disregard corporate separateness or establish that Autel USA's U.S.-related conduct is Autel China's own forum-directed conduct.

More importantly, the Supreme Court's decision in *J. McIntyre* is dispositive. There, a British manufacturer used an independent distributor to sell its machines in the United States; its officials attended trade shows in several states, but not in New Jersey; and up to four machines ultimately reached New Jersey. *J. McIntyre*, 564 U.S. at 886. The manufacturer had no office in New Jersey, paid no taxes there, owned no property there, did not advertise there, and sent no employees there. *Id*. The Supreme Court held that those facts did not establish purposeful availment because, at most, they "reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." *Id*.

10

The same reasoning applies here. Plaintiff's allegations, even if accepted as true, do not show that Autel China purposefully availed itself of the Texas market. At most, Plaintiff alleges that Autel Products entered the United States through Autel USA or other U.S. channels, and that Autel Apps were available through nationwide app-store platforms. Those allegations may suggest an alleged connection to the United States generally, but they do not show Texas-specific targeting by Autel China. *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.) (requiring "something more" than simply placing "a product into the stream of commerce," even if the defendant is aware that the stream "may or will sweep the product into the forum State"). Plaintiff does not allege that Autel China maintained offices, employees, property, bank accounts, or operations in Texas; advertised specifically in Texas; entered Texas-specific contracts; shipped products directly to Texas; or otherwise deliberately invoked the benefits and protections of Texas law.

Accordingly, Plaintiff has not alleged defendant-specific facts showing purposeful availment by Autel China in Texas. Plaintiff's allegations amount, at most, to generalized assertions that Autel Products and Autel Apps were accessible or available in the United States. That is insufficient. Because specific jurisdiction requires purposeful contacts with the forum state itself—not merely the United States as a whole—Plaintiff fails to establish minimum contacts between Autel China and Texas.

### 2.      Autel Robotics Europe GmbH

Plaintiff further attempts to establish purposeful availment by Autel Europe in Texas by invoking agency, alter-ego, and joint-venture theories. Dkt. 1 ¶¶ 7, 13. Those allegations fail as a matter of law. Plaintiff does not allege facts showing that Autel Europe purposefully directed any conduct to Texas, entered the Texas market, controlled U.S. sales, imported products into the

United States, or participated in any Texas-specific activity giving rise to Plaintiff's claims. Instead, Plaintiff relies on conclusory labels such as "agent," "alter ego," and "joint venturer." *Id*. ¶ 7.

Bare assertions that amount to nothing more than a "formulaic recitation of the elements" are "conclusory and are not entitled to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998). The same principle applies to jurisdictional allegations. A plaintiff cannot establish personal jurisdiction over a foreign defendant merely by reciting agency or alter-ego labels without pleading facts showing the necessary control, domination, or forum-directed conduct.

Plaintiff's allegations are particularly deficient as to Autel Europe. Autel Europe is a German entity responsible for sales, marketing, distribution, warranty, and customer support in Europe. Li Decl. ¶ 5. It does not conduct sales, marketing, distribution, importation, customer support, or other commercial activities in the United States. *Id*. ¶ 16. It does not sell accused products into Texas, direct advertising or marketing to Texas, maintain offices, personnel, property, or provide post-sale service to Texas customers. *Id*. ¶¶ 18-28. These facts foreclose any plausible contention that Autel Europe itself purposefully availed itself of the privilege of conducting activities in Texas.

Nor can Plaintiff establish jurisdiction over Autel Europe by attributing Autel China's or Autel USA's alleged contacts to Autel Europe. Plaintiff does not allege facts showing that Autel Europe controls Autel China, controls Autel USA, directs U.S. sales, participates in U.S. importation, manages Texas customer relationships, or exercises any authority over Texas-facing activities. At most, the Complaint alleges that Autel Europe participates in global distribution and

12

support of Autel products in Europe. Dkt. 1 ¶¶ 6–7. That allegation confirms Autel Europe's regional European role; it does not establish Texas contacts.

Even assuming Plaintiff's agency allegations were credited, they still would not establish purposeful availment in Texas. Plaintiff has failed to show that Autel China purposefully availed itself of the Texas market, and Plaintiff does not plead any separate Texas-directed conduct by Autel Europe. A derivative jurisdictional theory cannot supply Texas contacts where the alleged principal's own Texas contacts are insufficient and where the alleged agent has no Texas contacts at all.

Accordingly, Plaintiff has not alleged facts supporting personal jurisdiction over Autel Europe. The Complaint offers only conclusory agency, alter-ego, and joint-venture labels, while the actual facts show that Autel Europe is a German entity responsible for European—not U.S. or Texas—activities. Plaintiff's allegations therefore fail to establish purposeful availment by Autel Europe in Texas.

**B.      Plaintiff Fails to Show That Its Claims Arise Out of or Relate to Defendants' Alleged Texas Contacts.**

The second prong of the specific jurisdiction inquiry requires that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In other words, the defendant's contacts must be "suit-related." *Walden*, 571 U.S. at 284). This requirement demands a meaningful "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). "Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011).

Here, Plaintiff does not identify any Texas contact by either Autel China or Autel Europe

13

from which its claims arise. Plaintiff's infringement theories concern the design, publication, importation, marketing, and sale of Autel Products and Autel Apps. But the Complaint does not allege that any Autel Products was designed in Texas, imported by either Defendant into Texas, sold by either Defendant into Texas, shipped by either Defendant to Texas, or supported by either Defendant in Texas. Nor does Plaintiff allege that any Texas customer downloaded the Autel Apps through Texas-directed conduct by either Defendant. Alleged nationwide availability through app stores or downstream U.S. distribution is not a suit-related Texas contact. At most, Plaintiff alleges a generalized connection between the accused products and the United States as a whole, which cannot satisfy the requirement that the claims arise out of or relate to Defendants' own forum-state contacts.

This failure is fatal. Even if Autel Products or Autel Apps ultimately reached Texas through third-party platforms, Autel USA, or ordinary nationwide distribution channels, Plaintiff does not connect those alleged Texas contacts to any conduct by Autel China or Autel Europe. Specific jurisdiction cannot rest on contacts created by third parties, corporate affiliates, or the unilateral choices of customers. *Burger King*, 471 U.S. at 475. Because Plaintiff has not alleged that either Defendant created any suit-related Texas contact, Plaintiff cannot satisfy the second prong of the specific-jurisdiction analysis. The Complaint therefore fails to establish that Plaintiff's claims arise out of or relate to any purposeful Texas conduct by Autel China or Autel Europe.

**C.    Exercise of Jurisdiction Would Offend Fair Play and Substantial Justice.**

Even if Plaintiff could establish minimum contacts—which it cannot—the exercise of jurisdiction over Autel China and Autel Europe would be unreasonable and inconsistent with traditional notions of fair play and substantial justice. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be

14

considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The Court identified five considerations relevant to the reasonableness analysis:

> [1] "the burden on the defendant," [2] "the forum State's interest in adjudicating the dispute," [3] "the plaintiff's interest in obtaining convenient and effective relief," [4] "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and [5] the "shared interest of the several States in furthering fundamental substantive social policies."

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1355 (Fed. Cir. 2017) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The relevant factors weigh heavily against jurisdiction. First, the burden on Defendants is substantial. Autel China is a Chinese corporation and Autel Europe is a German corporation, neither of which is alleged to maintain operations, personnel, property, or business activities in Texas. Cheng Decl. ¶¶ 14-23; Li Decl. ¶¶ 18-28. Requiring two foreign entities to litigate in Texas based on allegations of nationwide product distribution and globally accessible software would impose a significant burden. *See Asahi*, 480 U.S. at 114 ("[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders"). Second, Texas has little interest in adjudicating claims against foreign entities whose alleged conduct is not directed at Texas and whose alleged forum contacts are, at most, derivative of nationwide commercial activity. Third, Plaintiff identifies no Texas-specific injury or Texas-centered conduct that would make this forum uniquely convenient or efficient for resolution of the dispute. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332–33 (Fed. Cir. 2008) (reasonableness inquiry considers the forum state's interest and the interstate judicial system's

15

interest in efficient resolution of controversies).

Under these circumstances, exercising jurisdiction would be fundamentally unfair and would offend traditional notions of fair play and substantial justice. Accordingly, the claims against Autel China and Autel Europe should be dismissed for lack of personal jurisdiction.

### D.    Plaintiff Cannot Establish Personal Jurisdiction Under Rule 4(k)(2).

In the alternative, Plaintiff invokes Federal Rule of Civil Procedure 4(k)(2). Dkt. 1 ¶ 14. But Plaintiff offers no substantive allegations or analysis showing that Rule 4(k)(2) applies to either Defendant.

Rule 4(k)(2) permits a court to exercise personal jurisdiction where "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009). When Rule 4(k)(2) applies, the relevant forum for the due-process analysis is the United States as a whole, rather than the state in which the district court sits. *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). A defendant may defeat Rule 4(k)(2) by "designat[ing] a suitable forum in which the plaintiff could have brought suit." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009).

As to Autel China, Rule 4(k)(2) is unavailable because Plaintiff itself alleges that Autel China conducts business in the United States through Autel USA, whose headquarters are located in the Western District of Washington. *See* Dkt. 1 ¶¶ 5, 12. By Plaintiff's own allegations, therefore, Autel China is not a defendant that is "not subject to jurisdiction in any state's courts of general jurisdiction," as Rule 4(k)(2) requires. *Touchcom*, 574 F.3d at 1415. Because Autel China is allegedly subject to jurisdiction in Washington, Rule 4(k)(2) does not apply.

16

As to Autel Europe, Rule 4(k)(2) fails for the opposite reason. Plaintiff does not allege facts showing that Autel Europe has minimum contacts with the United States as a whole. Autel Europe is a German entity responsible for European sales, marketing, distribution, warranty, and customer support. Li Decl. ¶ 5. It does not market, sell, distribute, import, or support products in the United States. *Id*. ¶ 16. Nor does Plaintiff allege any U.S.-directed conduct by Autel Europe giving rise to its claims. Because Autel Europe lacks the constitutionally required minimum contacts with the United States, the exercise of jurisdiction under Rule 4(k)(2) would not comport with due process. *Synthes*, 563 F.3d at 1295–97.

Accordingly, Plaintiff cannot establish personal jurisdiction over either Autel China or Autel Europe under Rule 4(k)(2).

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS

### A.    Service on Autel Robotics USA LLC's Registered Agent Does Not Constitute Service on Defendants.

Plaintiff's attempted service on Autel Robotics USA's registered agent in Texas does not constitute valid service on Autel China or Autel Europe. *See* Dkt. 3; Dkt 3-1. Neither Autel China nor Autel Europe is Autel USA. They are separate foreign entities, and Plaintiff was required to serve each Defendant in the manner authorized by Rule 4. Service on a domestic affiliate's registered agent is not service on a foreign defendant unless that agent is authorized by appointment or by law to accept service on behalf of the foreign defendant. Fed. R. Civ. P. 4(h)(1)(B), 4(h)(2).

Texas law confirms the same point. Each entity must designate and maintain its own registered agent, and the registered agent is "an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on ***the entity***." Tex. Bus. Orgs.

17

Code § 5.201(b)(1) (emphasis added). Thus, Autel USA's registered agent is the agent of Autel USA—not of separate foreign entities that have not designated or authorized that agent to accept service on their behalf. The Texas Secretary of State likewise explains that a registered agent is the agent of the particular entity for which it is appointed. *See* Texas Secretary of State, *Registered Agents*, https://www.sos.state.tx.us/corp/registeredagents.shtml (last visited Jun. 9, 2026) (explaining that "[a]n entity's registered agent is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity").

Plaintiff cannot make that showing of proper service here. Autel USA's registered agent is authorized to accept service for Autel USA only. It is not the registered agent, appointed agent, managing agent, general agent, or service agent of Autel China or Autel Europe. Cheng Decl. ¶¶ 38-40; Li Decl. ¶¶ 39-41. Nor has either Autel China or Autel Europe authorized Autel USA or Autel USA's registered agent to accept service of process on its behalf. Cheng Decl. ¶¶ 41-42; Li Decl. ¶ 42-43. Plaintiff's conclusory allegations of affiliation, agency, alter ego, or joint venture cannot cure defective service. Corporate affiliation alone does not make one entity the service agent of another, and service on a subsidiary or affiliate is insufficient absent facts showing actual authorization to receive service for the defendant. *See Lisson v. ING Groep N.V.*, 262 F. App'x 567, 569 (5th Cir. 2007) ("[T]he individual sought to be served must have actually authorized another to accept service of process on the would-be principal's behalf."); *see also id*. at 570 ("[D]elivery to a purported agent does not constitute service on the would-be principal, even if the 'agent' represents himself to be so authorized or accepts service.").

Because Plaintiff served only Autel USA's registered agent—not Autel China, Autel Europe, or any agent authorized to accept service for them—Plaintiff has failed to effect proper service on either Defendant. The Complaint should therefore be dismissed under Rule 12(b)(5) for

18

insufficient service of process.

**B.    Texas Civil Practice and Remedies Code § 17.045 Triggers the Hague Service Convention.**

Texas Civil Practice and Remedies Code § 17.045 triggers the Hague Service Convention because the statute requires that notice of service and a copy of the process be sent to the nonresident defendant. Where, as here, Defendants are located in China and Germany, compliance with § 17.045 necessarily requires the transmission of judicial documents abroad. Accordingly, service on Autel China and Autel Europe was subject to the Hague Service Convention.

The Hague Service Convention, to which the United States, China and Germany are parties, was adopted in 1965 to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). The Convention's "primary innovation" is a uniform method of service that "requires each state to establish a central authority to receive requests for service of documents from other countries." *Id*. at 275.

Where the Hague Service Convention applies, its procedures are mandatory. "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service [] in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988); U.S. Dep't of Just., Office of International Judicial Assistance, https://www.justice.gov/civil/page/file/1064896/dl?inline (last visited Jun. 9, 2026) ("If the Convention applies, parties cannot agree or stipulate to a method of service that the Convention neither authorizes nor permits."). Article 1 provides that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361, 362.

The Fifth Circuit has held that service pursuant to the Convention is mandatory "if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors*

19

*Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990). In determining whether service requires transmission abroad, courts "look to the method of service prescribed by the internal law of the forum state." *Id*. Applying that principle in *Sheets*, the Fifth Circuit found that the Hague Service Convention governed because the plaintiff attempted service under Louisiana's long-arm statute by mailing process directly to a Japanese defendant. *Id*. The court concluded that "[t]his transmittal of documents abroad is precisely the type of service that triggers the application of Hague Convention procedures." *Id*.

The same reasoning applies here. Texas's long-arm statute provides two methods of service on a nonresident defendant. *See* Tex. Civ. Prac. & Rem. Code §§ 17.043–17.044. Section 17.043 permits service on a nonresident who maintains a regular place of business in Texas through the person in charge of that business, while § 17.044 authorizes substituted service on the Texas Secretary of State. Critically, regardless of which method is used, Texas law requires that notice of the service and a copy of the process be transmitted to the nonresident defendant. *See* Tex. Civ. Prac. & Rem. Code § 17.045(a)-(e). Specifically, the Secretary of State or the person effecting service must "immediately mail" a copy of the process to the nonresident defendant. *Id*.

Accordingly, Texas long-arm statute itself requires the transmission of judicial documents to a foreign defendant located abroad. The service mechanism prescribed by Texas law therefore necessarily involves the transmittal of documents outside the United States. As in *Sheets*, such transmission abroad is "precisely the type of service that triggers the application of Hague Convention procedures." 891 F.2d at 537.

Because Autel China is located in China and Autel Europe is located in Germany, both Hague Convention member states, any attempt to serve them pursuant to Texas's long-arm statute necessarily required compliance with the Hague Service Convention. Plaintiff cannot avoid the

20

Convention by serving Autel USA's registered agent in Texas and treating that service as service on separate foreign entities.

**C.    Service Must Proceed Through the Central Authorities Under the Hague Service Convention, Because China and Germany Object to Article 10.**

Because the Hague Service Convention applies, Plaintiff was required to use a method permitted by the Convention and by the destination states. The Convention's default mechanism is service through the destination state's Central Authority. 20 U.S.T. at 362-64. Article 2 requires each contracting state to designate a Central Authority to receive requests for service, and Article 5 provides that the Central Authority "shall itself serve the document or shall arrange to have it served by an appropriate agency." *Id*. at 362-63.

Although Article 10 permits certain alternative channels—including postal channels and service through judicial officers—those channels are available only "[p]rovided the State of destination does not object." *Id*. at 363-64. The Supreme Court confirmed in *Water Splash* that Article 10 permits service by mail only where two conditions are satisfied: "first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash*, 581 U.S. at 284.

Those conditions are not satisfied here. China has expressly objected to Article 10(a), 10(b), and 10(c). *See* Hague Conference on Private International Law, China – Central Authority & Practical Information, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited Jun. 9, 2026) (noting China's objection to service by the methods provided in Article 10). Germany likewise has objected to Article 10(a), 10 (b), and 10(c). *See* Hague Conference on Private International Law, Germany – Central Authority & practical information, https://www.hcch.net/en/states/authorities/details3/?aid=257 (last visited Jun. 9, 2026).

Accordingly, Plaintiff could not serve Autel China or Autel Europe by mail, private process

server, delivery to an affiliate's registered agent, or any other Article 10 method. For Autel China, service was required through China's Central Authority, the Ministry of Justice, International Legal Cooperation Center, with compliance with China's translation and service requirements. For Autel Europe, service was required through Germany's designated authorities under the Convention, with compliance with Germany's language and procedural requirements. *See* 20 U.S.T. at 362–64.

Plaintiff's attempted service on Autel USA's registered agent in Texas bypassed these mandatory procedures. That service did not transmit process through the Central Authority of China or Germany, did not comply with Article 5, and was not authorized by Article 10 because both destination states object to Article 10 methods. Thus, once Plaintiff sought to serve foreign defendants located in China and Germany pursuant to Texas Civil Practice and Remedies Code § 17.045, the Convention controlled, and Plaintiff was required to comply with the Central Authority procedures.

Because Plaintiff failed to serve Autel China and Autel Europe through the procedures required by the Hague Service Convention, service is insufficient and the claims against them should be dismissed under Rule 12(b)(5).

## CONCLUSION

For the foregoing reasons, Defendants Autel Robotics Co., Ltd. and Autel Robotics Europe GmbH respectfully request that the Court dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2) and insufficient service of process under Rule 12(b)(5). In the alternative, Defendants respectfully request that the Court quash the purported service and require Plaintiff to effect service through a method authorized by the Hague Service Convention. Defendants further request such other and further relief as the Court deems just and proper.

22

Dated:    June 13, 2026.

**ANJIE BROAD LAW FIRM**

By: */s/   Zhiyu Liang*
    Zhiyu Liang (Cal. Bar No. 357770)
    14th Floor, North Tower, Beijing Kerry Centre
    No. 1 Guanghua Road
    Chaoyang District, Beijing 100020, China
    Phone: +86 (10) 8567-5988
    Email:   liangzhiyu@anjielaw.com

*Attorney for Defendants Autel Robotics Co., Ltd.*
*and Autel Robotics Europe GmbH*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 13, 2026, the foregoing document was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Texas using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.


By: */s/   Zhiyu Liang*
     Zhiyu Liang

*Attorney for Defendants Autel Robotics Co., Ltd. and Autel Robotics Europe GmbH*

24