## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC.,<br><br>    Plaintiff<br><br>    v.<br><br>AUTEL ROBOTICS CO., LTD. and<br>AUTEL ROBOTICS EUROPE GMBH,<br><br>    Defendant | Case No. 2:26-cv-00226-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CELLSPIN SOFT, INC.'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 8)**

Plaintiff Cellspin Soft, Inc. ("Cellspin") submits this Sur-Reply in opposition to Defendants'

Motion to Dismiss and in response to Defendants' Reply. Dkts. 8, 13.

**TABLE OF CONTENTS**

I.      INTRODUCTION...............................................................................................................1

II.     DEFENDANTS' REPLY-STAGE DECLARATION CREATES MORE
        FACTUAL DISPUTES THAN IT RESOLVES ...........................................................1

III.    AUTEL'S PUBLIC STATEMENTS MATERIALLY UNDERCUT THE
        CLEAN CORPORATE-SEPARATION NARRATIVE.................................................3

IV.     DEFENDANTS' RULE 4(K)(2) ARGUMENT IS INTERNALLY
        INCONSISTENT ...........................................................................................................7

V.      AUTEL EUROPE SHOULD NOT BE DISMISSED BASED SOLELY
        ON UNTESTED DECLARATIONS...............................................................................8

VI.     ANY SERVICE DEFECT MAY BE CURED, NOT USED TO DISMISS
        THE CASE.......................................................................................................................9

VII.    CONCLUSION ...............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999) ................5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................................5

*Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)....................................5

*Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327 (5th Cir. 2004) .......................5

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983).......................................................5

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) .......................................................6

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) ....................................................7

*Orange Electronic Co. Ltd. v. Autel Intelligent Technology Corp., Ltd.*,
    No. 2:21-cv-00240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022)...............................6, 9

*Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533 (5th Cir. 1990) ..........................................9

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009)...................................7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988).............................................9

*Walden v. Fiore*, 571 U.S. 277 (2014)..............................................................................................5

*Way v. Mueller Brass Co.*, 840 F.2d 303 (5th Cir. 1988) .................................................................9

**Rules**

Fed. R. Civ. P. 4(f)(3) ....................................................................................................................... 9

Fed. R. Civ. P. 4(k)(2) ...................................................................................................................... 7

## I.    INTRODUCTION

Defendants' Reply and supporting declarations do not eliminate the jurisdictional and service disputes; they confirm them. Defendants rely heavily on a reply-stage supplemental declaration that attempts to reassign Autel's public U.S.-facing materials to Autel USA or other entities, while Autel China admits that it designs, develops, and manufactures the firmware, mobile applications, cloud/web services, drone products, and overall architecture for drones sold under the Autel brand. Dkt. 9 ¶¶ 4–8, 30–32; Dkt. 14. Critically, Autel China also admits that it designs and develops Autel Apps and makes certain Autel Apps available through Apple's App Store and other app stores. Dkt. 9 ¶ 24. That admission directly ties Autel China to the accused app ecosystem and to the distribution channel through which U.S. users access the accused functionality.

Those competing factual assertions should not be resolved against Cellspin on a paper record. Defendants' declarations are self-serving, carefully qualified, and materially undercut by Autel's own public statements and Autel China's own admissions. At minimum, the record presents factual disputes concerning control, attribution, app distribution, website administration, product flow, U.S. operations, Texas-facing activity, R&D coordination, cloud/data operations, and service. Those disputes support targeted jurisdictional discovery. And if the Court finds any service defect, the proper remedy is to permit service to be cured, not dismissal.

## II.    DEFENDANTS' REPLY-STAGE DECLARATION CREATES MORE FACTUAL DISPUTES THAN IT RESOLVES

Defendants' Supplemental Declaration of Zhuanpeng Cheng attempts to distance Autel China from Cellspin's exhibits by asserting that many materials were prepared or published by Autel USA or other entities outside mainland China. Dkt. 14 ¶¶ 4–6, 7–18. That reply-stage declaration raises more questions than it answers.

1

Autel China admits that it designs, develops, and manufactures the firmware, mobile applications, cloud/web services, and overall architecture for drones sold under the Autel brand. Dkt. 9 ¶ 4. It also admits that it designs and develops Autel Apps, makes certain Autel Apps available through Apple's App Store and other app stores, and that those Apps are used in connection with Autel Products. Dkt. 9 ¶¶ 24, 30. Those admissions matter because Cellspin's infringement theory is not limited to downstream retail sales. The accused functionality concerns Autel's integrated app, firmware, cloud/web services, pairing, data-transfer, and automatic-upload architecture. Paragraphs 24 and 30 are especially important because they connect Autel China not only to the accused software functionality, but also to the app-store distribution mechanism and product-use ecosystem through which U.S. users obtain and use that functionality.

The Supplemental Cheng Declaration then attempts to sever Autel China from the U.S.-facing website, app ecosystem, and commercial activity by claiming that Autel USA independently manages U.S.-facing functions and that www.autelrobotics.com is an "overseas-facing website" not operated by Autel China. Dkt. 14 ¶¶ 4–6. But Cheng does not identify all entities that administer the website, who controls app download pages, who controls app-store accounts, who controls privacy policies, who controls backend servers, who controls product data, or who controls the operational app/cloud functionality accused of infringement.

The declaration also contains important admissions. Cheng admits that Cellspin's Exhibit 6 was issued by Autel China. Dkt. 14 ¶ 11. That exhibit concerns Autel Sky and Autel Explorer app availability, app updates, backend-server issues, Android downloads, and official download channels. Dkt. 12-6. Cheng further admits that Autel China provides products to Autel USA, after which Autel USA manages U.S. importation, marketing, distribution, sales, customer support, and

2

post-sale service. Dkt. 14 ¶¶ 20–21. That is an established U.S. product-flow and distribution relationship, not a random or isolated contact.

These facts create jurisdictional disputes that should be tested through discovery, including:

1. Who controls, approves, or participates in content published on www.autelrobotics.com concerning Autel's U.S. operations, overseas subsidiaries, and after-sales service centers;

2. Who decided that the official U.S. shop would be offered by "AUTEL ROBOTICS Co., Ltd. and its affiliated companies";

3. Who at Autel China was involved in the March 2026 statement regarding U.S. app availability, backend servers, app updates, and Android downloads;

4. Who controls the app-store accounts, app-download pages, privacy policies, backend servers, user data, and app/cloud functionality used with the accused products; and

5. What coordination exists among Autel China, Autel USA, and Autel Europe concerning website content, app development, backend operations, product flow, support, R&D, and U.S. market strategy.

Defendants' own filings demonstrate why discovery is necessary.

## III.   AUTEL'S PUBLIC STATEMENTS MATERIALLY UNDERCUT THE CLEAN CORPORATE-SEPARATION NARRATIVE

Defendants' declarations portray Autel China as having no meaningful U.S.-facing role beyond supplying products to Autel USA outside the United States. Autel's own public statements materially undercut that narrative.

Autel's "About Us" page states that Autel Robotics Co., Ltd. is engaged in R&D, design, manufacturing, and sales of civil UAV products and identifies overseas subsidiaries and after-sales service centers in the United States and Germany. Dkt. 12-1. Autel's official store terms state that the site is offered by "AUTEL ROBOTICS Co., Ltd. and its affiliated companies" and identify the

3

Bothell, Washington address. Dkt. 12-10. The March 3, 2026 app statement was issued by Autel Robotics Co., Ltd. and addressed app availability, backend servers, Android downloads, and official app-update channels. Dkt. 12-6; Dkt. 14 ¶ 11. Autel's export-compliance statement refers to Autel Robotics Co., Ltd. and its holding or controlled subsidiaries and affiliated entities in connection with hardware, software, cloud, big data, technology, and U.S. export-control compliance. Dkt. 12-8. And the PRNewswire release attributed to Autel Robotics Co., Ltd. discusses supply to U.S. and European markets, U.S. AWS data storage, and R&D bases in Seattle, Munich, and Silicon Valley. Dkt. 12-2.

These public materials do not permit dismissal on Defendants' <u>untested</u> declarations. At minimum, they create factual disputes about the true relationship among Autel China, Autel USA, Autel Europe, the accused apps, the accused cloud/web services, official Autel websites, U.S. support channels, and U.S./Texas-facing product activity.

Defendants' declarations do **not** squarely answer these public materials. Instead, they rely on narrow qualifiers - such as "itself," "directly," "Texas-specific," and "responsible for" - to deny direct Texas sales or direct Texas service while avoiding the broader jurisdictional questions actually presented by this patent case. The accused instrumentalities are not merely downstream retail drone sales. They include Autel drones operating with Autel mobile applications, firmware, cloud/web services, backend systems, app-store distribution, app updates, data transfer, and upload functionality. Autel China admits that it designs, develops, and manufactures the firmware, mobile applications, cloud/web services, and overall architecture for drones sold under the Autel brand. Dkt. 9 ¶ 4. It also admits that Autel Apps are published through app stores and used with Autel Products. Dkt. 9 ¶¶ 6, 24, 30. The Supplemental Cheng Declaration further admits that Autel China

4

issued the March 2026 app-related statement and provides products to Autel USA for subsequent U.S. importation, marketing, distribution, sales, and post-sale service. Dkt. 14 ¶¶ 11, 20–21.

Thus, the real dispute is **not** whether Autel China personally rang up a retail sale in Texas. The dispute is whether Autel China purposefully participated in and benefited from an integrated Autel-branded system that places accused products, apps, updates, backend services, and support channels into the United States and Texas through coordinated affiliates and official Autel channels. Defendants' declarations ask the Court to accept Autel's internal allocation of responsibility without discovery, even though Autel's own public materials attribute UAV sales, app operations, backend-server issues, official downloads, U.S. data storage, U.S. and German subsidiaries, R&D bases, and official store activity **to** Autel Robotics Co., Ltd. and its affiliates. That is precisely the type of factual dispute that should not be resolved against Cellspin at the prima facie stage.

Defendants' authorities do not compel a different result. Cellspin does not dispute the general principles in *Walden v. Fiore*, 571 U.S. 277 (2014), or *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), that jurisdiction must be based on defendant-created contacts. Nor does Cellspin rely on corporate affiliation alone, as in Defendants' corporate-separateness cases such as *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925), *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983), *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999), and *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327 (5th Cir. 2004). **Cellspin relies on Autel China's own admitted role in the accused technology, Autel's app distribution, official app/backend statements, product flow to Autel USA for U.S.** distribution, public Autel statements concerning U.S. operations, and Texas-facing promotional

activity. To the extent Defendants contend all of that activity belongs only to Autel USA or other affiliates, that is a factual attribution dispute requiring discovery.

Nor does *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), require dismissal. This is not a case involving only a foreign manufacturer's generalized intent to serve the United States. Autel China admits involvement in the accused app, firmware, cloud/web-service, and drone architecture. Dkt. 9 ¶ 4. Autel China admits the Autel Apps are made available through app stores. Dkt. 9 ¶¶ 6, 24. Cheng admits Autel China issued at least one app-related statement and provides products to Autel USA for U.S. importation, distribution, sales, support, and service. Dkt. 14 ¶¶ 11, 20–21. At minimum, those facts justify targeted jurisdictional discovery.

Targeted discovery would not be a fishing expedition. It would be directed to the exact factual disputes created by Defendants' reply-stage declaration: who controls the accused app-store accounts, app updates, backend servers, official download pages, privacy policies, product data, U.S. product flow, official store terms, support routing, Texas-facing promotional activity, and intercompany coordination among Autel China, Autel USA, and Autel Europe. Defendants cannot defeat jurisdiction by submitting declarations that assign those functions to affiliates while simultaneously withholding discovery into how those assignments actually work.

This Court's decision in *Orange Electronic Co. Ltd. v. Autel Intelligent Technology Corp., Ltd.*, No. 2:21-cv-00240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022), **remains relevant.** Defendants attempt to distinguish *Orange* because it involved a different Autel entity and record. But *Orange* is important because this Court evaluated an Autel-affiliated foreign defendant in the context of Autel-branded U.S. distribution and Texas-facing sales channels. Here, Autel China's admitted role is tied directly to the accused functionality: firmware, mobile applications, cloud/web services, and overall architecture. If Defendants contend Autel's public materials and

6

U.S./Texas-facing conduct belong only to Autel USA, that factual separation should be tested through discovery.

### IV.    DEFENDANTS' RULE 4(k)(2) ARGUMENT IS INTERNALLY INCONSISTENT

Defendants argue that Rule 4(k)(2) is unavailable because Autel China could have been sued in Washington through Autel USA. Dkt. 13 at 5–6. This argument is **internally inconsistent** with the rest of their briefing.

Throughout their Motion and Reply, Defendants insist that Autel USA is a separate legal entity that independently handles all U.S. commercial activity, and that Autel China does not control Autel USA's U.S.-facing conduct. Dkt. 9 ¶¶ 8–13, 31–35; Dkt. 14 ¶¶ 4–6, 20–21. Yet when addressing Rule 4(k)(2), Defendants rely on Autel USA's Washington presence **to argue** that Autel China could have been sued there.

**Defendants cannot use Autel USA as both shield and sword.** If Autel USA's U.S. contacts are too separate to support Texas jurisdiction over Autel China, then Defendants have not shown that Washington is a suitable alternative forum for claims against Autel China. Merely pointing to Autel USA's headquarters is not the same as identifying a state where this action could have been brought against Autel China at the time of filing.

Rule 4(k)(2) exists for foreign defendants with sufficient national contacts but no state-specific forum. A defendant seeking to defeat Rule 4(k)(2) must identify a forum where suit could have proceeded. See *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). Defendants have not conceded jurisdiction in Washington and have not shown that Washington was a forum where this case could have been filed against Autel China. At minimum, the national-contacts issue further supports jurisdictional discovery into Autel China's U.S.-wide contacts.

## V.    AUTEL EUROPE SHOULD NOT BE DISMISSED BASED SOLELY ON UNTESTED DECLARATIONS

Defendants ask the Court to foreclose jurisdictional discovery as to Autel Europe. That request should be denied.

The Li Declaration largely denies U.S. and Texas sales, marketing, importation, support, service, warranty, data storage, cloud operations, and control over Autel USA or Autel China. Dkt. 10 ¶¶ 5–17, 24–35. But it does **not** address the full scope of Autel Europe's role in the global Autel structure, including R&D coordination, product/app/firmware involvement, technical support workflows, intercompany agreements, shared systems, customer-data or app/cloud coordination, or involvement with the same accused instrumentalities.

Autel's public materials define "Autel Robotics" as including Autel Robotics Co., Ltd. and its holding or controlled subsidiaries and affiliated entities operating in connection with hardware, software, cloud, big data, technology, and U.S. export-control compliance. Dkt. 12-8. Public materials also reference Munich R&D and European sales/support structures. Dkts. 12-2, 12-3, 12-11. These facts support targeted discovery into Autel Europe's relationship with Autel China and the accused products, particularly regarding R&D coordination, app/firmware/cloud functionality, support workflows, and intercompany control.

Defendants' cited discovery cases do not compel dismissal. Cases rejecting fishing expeditions do not apply where discovery is targeted to specific jurisdictional issues raised by Defendants' **own declarations and public statements**. If the Court is not prepared to find jurisdiction over Autel Europe on the present record, it should permit targeted discovery before dismissal.

8

## VI.    ANY SERVICE DEFECT MAY BE CURED, NOT USED TO DISMISS THE CASE

Defendants take the position that any service defect must be cured only through Hague Central Authority procedures. Dkt. 13 at 8–10. But Defendants' cases do not require dismissal. Cellspin does not contend that actual notice alone satisfies Rule 4. Defendants cite *Way v. Mueller Brass Co.*, 840 F.2d 303 (5th Cir. 1988), for the proposition that actual notice alone does not cure defective service. But *Way* does not hold that dismissal is mandatory where service can be cured.

Here, Defendants have actual notice, appeared through counsel, and fully briefed personal jurisdiction and service. Those facts support a curative remedy, not dismissal.

Nor do *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533 (5th Cir. 1990), or *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), require dismissal. Those cases address when the Hague Service Convention applies. They do not prevent the Court from quashing service only, extending time to complete Hague service, authorizing an alternative method not prohibited by international agreement, or otherwise permitting service to be cured.

Rule 4(f)(3) remains available where the Court orders service by means not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). Defendants argue that service on Beijing-based counsel would require transmission abroad. If the Court agrees, it can fashion another appropriate method, extend time for Hague service, or quash service only while preserving the case. Defendants' objection to one possible method does not justify dismissal.

*Orange* is instructive because this Court rejected dismissal based on service after authorizing alternative service on counsel. *Orange*, 2022 WL 4368160, at *6. The precise service method may differ depending on the record, but the principle remains: a curable service issue should not terminate a patent case where Defendants have actual notice, have appeared, and have fully briefed their threshold defenses. If the Court finds service deficient, Cellspin respectfully requests that the Court quash service only and provide a curative path, including alternative

9

service, additional time to complete Hague service, or other court-directed service not prohibited by international agreement.

## VII.    CONCLUSION

Defendants' declarations and Reply do not establish that dismissal is warranted. They confirm disputed jurisdictional facts and curable service issues. Cellspin respectfully requests that the Court deny Defendants' Motion to Dismiss. In the alternative, Cellspin requests targeted jurisdictional discovery as to Autel China and Autel Europe and, if necessary, an order quashing service only and permitting service to be cured.

Dated:  July 9, 2026

Respectfully Submitted


*/s/ Randall Garteiser*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   California Bar No. 239829
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   California Bar No. 232473
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

**ATTORNEYS FOR PLAINTIFF**

10

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on all counsel of record in this case via electronic mail via this Court's CM/ECF system on this time-stamped date.

/s/ Randall T. Garteiser
Randall T. Garteiser

11